*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES KENNETH TEDDY, JR.,

        Defendant-Appellant.

UNPUBLISHED
August 06, 2026
1:54 PM

No. 375201
St. Clair Circuit Court
LC No. 24-001608-FH

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact with victim under 13 by someone 17 or older). Defendant was sentenced to 2 to 15 years' imprisonment and lifetime electronic monitoring. We affirm his conviction, vacate his sentence, and remand for resentencing.

## I. FACTUAL BACKGROUND

This case arose out of defendant's inappropriate sexual contact with his niece. Defendant married Erica Teddy in July 2018. Erica's sister, Michelle, is the victim's mother. Erica and Michelle had another sister, Vanessa Clearwood.

According to the testimony, the seven-year-old victim and her younger brother stayed the night at defendant and Erica's apartment in August 2018. When the victim was asleep on the couch, defendant approached her, crouched down, and inserted his hand into the victim's shorts and touched her vagina over her underwear. Defendant's touch woke the victim up. She moved her leg, which startled defendant, and he retreated to the bathroom. A few minutes later, defendant returned to the victim and again touched her vagina over her underwear. The victim turned to face the back of the couch. Defendant again left the living room and went to the bathroom. Defendant came back, touched her, and then left for the bathroom a total of five or six times.

Several years later, in 2024, the victim reported the incident and, after an investigation, defendant was charged with one count of CSC-II. He proceeded to trial at which the victim testified.

Relevant to the issues discussed on appeal, and among other things, Clearwood testified that Erica had not spoken to her since the allegations against defendant were made. Specifically, Clearwood testified that she thought the reason Erica stopped talking to her in July 2024 was related to the case against defendant, and that Erica stopped talking to Clearwood after Clearwood "did not pick her side." Clearwood also explained that there had been a family dispute between the victim's mother and Erica in 2019 and that Clearwood had been closer with Erica than Erica was with the victim's mother. Clearwood also testified on direct that defendant asked her if she had any information about the victim's mother or grandmother that he could use in the case. Defendant cross-examined Clearwood on several family conflicts.

Erica, meanwhile, testified that she slept in a chair in the living room the night that the victim slept at her house, so, from her perspective, defendant could not have touched the victim. The jury convicted defendant as charged.

At sentencing, defendant objected to scoring Offense Variable (OV) 12, which applies if defendant committed "contemporaneous felonious criminal acts." Defendant argued that the sentencing offense included all the felonious acts from that night. The trial court disagreed and assessed 25 points for OV 12, the highest possible score, applicable when "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." Defendant was sentenced to 2 to 15 years' imprisonment. This appeal followed.

## II. PROSECUTORIAL ERROR

Defendant first argues that the prosecutor erred when she elicited an impermissible legal conclusion about whether Clearwood believed the victim's allegations.[1] Alternatively, defendant argues that his trial counsel was ineffective for failing to object to the prosecutor's questioning. Next, defendant argues that, in her closing argument, the prosecutor improperly shifted the burden of proof and vouched for the victim's credibility. He also argues that his trial counsel was ineffective for not objecting to those portions of the prosecutor's closing argument. We disagree.

"To preserve a claim of prosecutorial error, a defendant must timely and specifically challenge the prosecutor's statements or conduct." *People v Thurmond*, 348 Mich App 715, 735; 20 NW3d 311 (2023). Defendant did not object to the prosecutor's statements or questions that he now challenges on appeal. Thus, any issues related to prosecutorial error are unpreserved. This Court reviews unpreserved claims of prosecutorial error "for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

---

[1] In his brief on appeal, defendant directs our attention to the portion of the trial transcript where the prosecutor questioned *Clearwood* about the end of her relationship with Erica, but he states in his brief that the prosecutor improperly elicited testimony from Erica. We refer to the testimony as it happened, not as described by defendant.

To preserve an issue of ineffective assistance of counsel, a defendant must move for a new trial, request a *Ginther*[2] hearing, or move for this Court to remand for a *Ginther* hearing. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017). Defendant did none of these things regarding his claims of prosecutorial error. Thus, his ineffective assistance of counsel claims based on these alleged errors are unpreserved. *Id*. When an issue of ineffective assistance of counsel is unpreserved, this Court's "review is limited to mistakes apparent from the record." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

"The test for prosecutorial error is whether the defendant was denied a fair trial." *Thurmond*, 348 Mich App at 735. Claims of prosecutorial misconduct "are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020) (quotation marks and citation omitted).

## A. CLEARWOOD'S TESTIMONY

Defendant first challenges as improper the prosecutor's questioning of Clearwood, arguing that she elicited testimony and opinion from Clearwood about the truthfulness of the victim's allegations.

MRE 701 provides, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Although under MRE 704 "[a]n opinion is not objectionable just because it embraces an ultimate issue," "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense[.]" *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (quotation marks and citation omitted). And "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

Here, defendant mischaracterizes the record by asserting that Clearwood expressed an opinion on defendant's guilt, as a review of Clearwood's testimony reveals that she did not opine that the victim was telling the truth. Clearwood's testimony merely provided background regarding family disputes between the sisters and context for defendant's request that Clearwood provide information about the victim's mother and grandmother to support his case. Clearwood's testimony did not include an opinion that the victim was telling the truth or even discuss the victim's specific allegations. Likewise, Clearwood did not claim that defendant was guilty, only that she was not on Erica's side in the family dispute related to the case, which ended their communication. The prosecutor's questions and Clearwood's answers also provided context for the testimony provided by the victim's mother. Simply because Clearwood did not take Erica's side in a family dispute did not mean that Clearwood endorsed the victim's testimony or believed her allegations. Thus, defendant has not established that the prosecutor plainly erred by questioning Clearwood on these topics.

---

[2] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

This conclusion means that defendant was not deprived of the effective assistance of counsel when his counsel did not object to Clearwood's contested testimony. A criminal defendant has a right to a fair trial and therefore to the effective assistance of counsel. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021), citing US Const, Am VI, and Const 1963, art 1, § 17. "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016), citing *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008) (quotation marks and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Defendant cannot establish either prong of the *Strickland* test. As explained, the prosecutor did not elicit improper opinion testimony from Clearwood regarding the credibility of the victim's allegations. Therefore, raising an objection to her testimony was unnecessary and would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defendant is not entitled to relief on this claim of error.

## B. CLOSING ARGUMENT

Defendant argues next that the prosecutor deprived defendant of a fair trial by shifting the burden of proof and vouching for the victim's credibility in her closing argument.

Prosecutors are afforded great latitude regarding their arguments at trial and "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). That said, "[a] prosecutor may not imply . . . that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). "Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. at 464. But "attacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005) (citations omitted).

Additionally, "a prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, "a prosecutor may comment on his own witnesses'

-4-

credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id.*

Defendant claims that the prosecutor distorted the burden of proof in her closing argument by requiring the jury to conclude that either the victim or Erica was a liar. In the contested portion of her argument, the prosecutor stated,

> So you've got two competing stories here. [The victim] says [d]efendant sexually assaulted her and Erica gets up there, under oath as well, and says, no way I was with them all night. But both cannot be true. But they don't cancel each other out, well, [the victim] says it happens. Erica says it didn't. Well, I guess we don't know. No, you . . . I think you know. You can use your reason and common sense. They don't cancel each other out. Only one of them is true.

In this segment of her closing, the prosecutor argued that aspects of Erica's testimony and the victim's testimony were contradictory and that, in the areas which could not be reconciled, the jurors should use "reason and common sense" to decide who to believe, as only one can be true. The prosecutor was permitted to argue that the victim's testimony was more credible than Erica's as "the question of the defendant's guilt depend[ed] on which witnesses the jury believe[d]." *Thomas*, 260 Mich App at 455. Contrary to defendant's argument, the prosecutor's statements did not distort the burden of proof by requiring the jury to find that the prosecutor's witnesses were lying to acquit defendant. Rather, the prosecutor "merely attacked the credibility of a theory defendant advanced at trial," *People v Callon*, 256 Mich App 312, 331; 662 NW2d 501 (2003), that, based on Erica's testimony, no abuse occurred because Erica slept in the same room as the victim on the night in question.

Moreover, the trial court instructed the jury on the correct burden of proof, that any comments or arguments from the parties' attorneys were not evidence, and that it was required to determine which witnesses to believe, as well as how important their testimony was. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 789 (2020) (quotation marks and citation omitted). Because the prosecutor did not distort the burden of proof, she did not commit plain error in her closing argument.

Defendant's argument that the prosecutor improperly vouched for the victim's credibility when she stated that the victim was "telling [the jury] what actually happened to her" similarly fails. Examining the context of the statement, the prosecutor was not claiming to have special knowledge about the victim's truthfulness but, instead, she was arguing that the victim's testimony was worthy of belief. *Thomas*, 260 Mich App at 455.

Moreover, the prosecutor's comments "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Smith*, 351 Mich App 1, 29-30; 34 NW3d 593 (2024) (quotation marks and citation omitted). At trial, defendant contended that the victim's mother and grandmother influenced the victim to make the allegations because they did not get along with Erica and defendant. Thus, in the context of the family dispute, the prosecutor focused on why the victim's testimony made sense and why

defendant's theory did not. The prosecutor did not vouch for the victim's credibility and did not commit plain error.

Defendant's contention that trial counsel's performance was ineffective for failing to object to the prosecutor's comments also fails. Defendant has not established that the prosecutor's argument was objectionable, and trial counsel was not required to raise a meritless argument or futile objection. *Ericksen*, 288 Mich App at 201. Accordingly, defendant has not demonstrated that his counsel's failure to object fell below an objective standard of reasonableness and has failed to establish an error apparent from the record regarding trial counsel's failure to object to the prosecutor's closing argument. *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018).

### III. LIFETIME ELECTRONIC MONITORING

Defendant argues next that his sentence violates the Fourth and Eighth Amendments of the United States Constitution and the corresponding sections of the Michigan Constitution because lifetime electronic monitoring constitutes cruel or unusual punishment and an unreasonable search. We disagree.

"To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (citation omitted). Though defendant moved for this Court to remand, defendant did not raise this argument before the trial court. Thus, this argument is unpreserved. *Id*. This Court reviews unpreserved constitutional claims for plain error affecting substantial rights. *People v Caddell*, 332 Mich App 27, 40; 955 NW2d 488 (2020).

### A. CRUEL AND/OR UNUSUAL PUNISHMENT

The United States Constitution prohibits "cruel and unusual punishments," but the Michigan Constitution prohibits "cruel or unusual punishment." US Const, Am VIII; Const 1963, art 1, § 16. Because the Michigan Constitution provides broader protections than the federal Constitution, "if a sentence is constitutional under Michigan's standard, it is constitutional under the Eighth Amendment as well." *In re Harder*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368645); slip op at 10. "A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). The constitutional challenge may be brought as a facial or an as-applied challenge. *Id*. "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application of a facially valid law to individual facts." *Id*. (quotation marks and citations omitted).

Defendant argues that lifetime electronic monitoring is cruel or unusual punishment as applied to him as a person convicted of CSC-II against a victim who was under 13 years old. MCL 750.520n(1). Because the failure to meet the requirements attendant to lifetime electronic monitoring can result in further criminal penalties, MCL 750.520n(2), courts recognize lifetime electronic monitoring as a punishment for those on whom it is imposed as part of their criminal sentence. *People v Cole*, 491 Mich 325, 336; 817 NW2d 497 (2012). Only "grossly disproportionate" punishments, however, are unconstitutional. *People v Bullock*, 440 Mich 15, 34

-6-

n 17; 485 NW2d 866 (1992). To determine if a punishment is "grossly disproportionate," courts apply the four-factor test from *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972), as affirmed in *Bullock*, 440 Mich at 33-35. *People v Kardasz*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165008); slip op at 33. See also *People v Ellis*, ___ Mich ___, ___; ___ NW3d ___ (2026) (Docket No. 166766); slip op at 15.

But, as defendant acknowledges, this Court has held that lifetime electronic monitoring is not cruel or unusual punishment on its face after considering the factors relevant to gross disproportionality. *People v Hallak*, 310 Mich App 555, 577; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016). This Court also held in *Hallak* that the defendant's as-applied challenge failed after considering the same factors. *Id*. at 576 ("[W]hen employing an as-applied standard under the state Constitution, lifetime electronic monitoring is not cruel and unusual punishment.").

Defendant does not argue that the relevant *Lorentzen* factors establish that lifetime electronic monitoring is grossly disproportionate and thus unconstitutional as applied to him. Instead, he merely argues that he expected that our Supreme Court's decision in *Kardasz* (which was pending at the time he filed his brief) would control the outcome of this issue and he raised this issue to preserve it. However, *Kardasz* ultimately declined to consider a constitutional challenge to lifetime electronic monitoring, *Kardasz*, ___ Mich at ___; slip op at 2, and it did not overrule or criticize *Hallak*'s analysis of whether lifetime electronic monitoring constitutes cruel or unusual punishment. Therefore, *Hallak* remains binding and guides our analysis. *People v Muniz*, 343 Mich App 437, 440; 997 NW2d 325 (2022), citing MCR 7.215(C)(2) and MCR 7.215(J)(1).

In *Hallak*, the defendant was subject to lifetime electronic monitoring after his conviction of CSC-II against a 12-year-old victim. *Hallak*, 310 Mich App at 559-560. He was also convicted of third-degree criminal sexual conduct and six counts of fourth-degree criminal sexual conduct. *Hallak* noted that "[s]exual offenses involving children under 13 years of age are grave offenses and, given the judicially recognized recidivism rate for these offenders, this level of protection is not clearly excessive or grossly disproportionate." *Id*. at 576. Although the defendant in that case had no prior record, "there was evidence of improper sexual acts involving 13 women or children," and that evidence suggested that "lifetime electronic monitoring would help to protect potential victims from defendant, who in turn would likely be deterred from engaging in such acts if he were closely monitored." *Id*.

Here, defendant fails to identify any specific factors that render lifetime electronic monitoring unconstitutional as applied to him, meaning he has not provided a legally relevant basis to distinguish his case from *Hallak*. We are bound to follow *Hallak*. *Muniz*, 343 Mich App at 459. As such, defendant's challenge to lifetime electronic monitoring as applied to him fails.

B. UNREASONABLE SEARCH

Both the United States Constitution and the Michigan Constitution prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Michigan Constitution generally provides the same protection as the Fourth Amendment. *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991). The use of a GPS tracking device to track the location of a sex offender

is a search under the Fourth Amendment. *Grady v North Carolina*, 575 US 306, 307, 310; 135 S Ct 1368; 191 L Ed 2d 459 (2015). Accordingly, the use of lifetime electronic monitoring in Michigan is also a search. *Hallak*, 310 Mich App at 579. "But, as the *Grady* Court also noted, that conclusion does not end the Fourth Amendment inquiry, as the Fourth Amendment only precludes unreasonable searches." *Id*.

To determine whether a search is reasonable, we consider "all the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Id*. (citation omitted). "The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of activity against invasion of the individual's privacy." *Id*. (citation omitted).

Once again, *Hallak* controls the outcome here. *Hallak* balanced the public interests in punishing and deterring child sex offenders and protecting children against the invasion of the defendant's privacy interests, concluding that although "it may certainly be that such monitoring of a law abiding citizen would be unreasonable, on balance the strong public interest in the benefit of monitoring those convicted of CSC-II against a child under the age of 13 outweighs any minimal impact on defendant's reduced privacy interests." *Id*. at 581. Thus, *Hallak* held that lifetime electronic monitoring is not an unreasonable search because of the competing interests at play, and defendant's Fourth Amendment challenge necessarily fails as we are bound to apply this holding. MCR 7.215(C)(2).

## IV. OFFENSE VARIABLE 12

Finally, defendant argues that the trial court erred when it assessed 25 points under OV 12 because he did not commit any separate contemporaneous felonious criminal acts. We agree.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "We review de novo whether the facts as found were adequate to satisfy the statutory scoring conditions." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

It is appropriate to assess an offender 25 points for OV 12 when "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). The same phrase—"contemporaneous felonious criminal acts"—is used in the other six subparts of section 777.42(1), which provide for different numbers of OV points depending on the number and nature of the "acts." "A felonious criminal act is contemporaneous" if "[t]he act occurred within 24 hours of the sentencing offense," and "[t]he act has not and will not result in a separate conviction." MCL 777.42(2)(a). When scoring OV 12, "a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010).

"Because the Legislature used the word 'act' in one portion of MCL 777.42(2)(a)(*i*) and the phrase 'sentencing offense' later in the same sentence, we must presume it intended to draw a distinction between the two." *People v Carter*, 503 Mich 221, 227; 931 NW2d 566 (2019).

The *Carter* Court continued:

[A] determination of whether an offender has engaged in multiple "acts" for purposes of OV 12 does not depend on whether he or she could have been charged with other offenses for the same conduct. What matters, instead, is whether the 'sentencing offense' can be separated from other distinct "acts." This Court has previously defined "sentencing offense" in the context of OVs as "the crime of which the defendant has been convicted and for which he or she is being sentenced." [*Id*. quoting *People v McGraw*, 484 Mich 120, 122 n 3; 771 NW2d 655 (2009).]

In *Carter*, the Michigan Supreme Court considered a defendant's sentence following a conviction of assault with intent to do great bodily harm, MCL 750.84. *Carter*, 503 Mich at 229. At trial, evidence showed that the defendant had fired three shots through the door of an apartment he knew to be occupied. *Id*. at 223. The prosecution, in its closing argument, "relied on all three gunshots as evidence of defendant's intent to commit murder or inflict great bodily harm[.]" *Id*. at 229. *Carter* held that "[t]hose same three gunshots cannot then be used to establish separate 'acts' that occurred within 24 hours of the 'sentencing offense' under" OV 12. *Id*.

In the present matter, defendant argues that the sentencing offense included all of the instances of touching, so, under *Carter*, the instances could not be contemporaneous felonious criminal acts for purposes of OV 12.

In assessing the points, the trial court emphasized the "clear breaks between the . . . multiple instances that support the scoring of 25 points for OV 12." A temporal separation may distinguish certain "acts" from the sentencing offense depending, for example, on the length of time between the acts. But the relevant question under *Carter* is not whether the defendant's conduct can be separated into distinct acts, but whether the "acts" are distinguishable from the "sentencing offense." Answering this requires that we consider the underlying factual circumstances established at trial as well as the prosecution's theories supporting the conviction. *Carter*, 503 Mich at 227.

Here, the victim testified at trial that defendant came back and touched her vagina between her shorts and her underwear five or six times, and that defendant would stop touching the victim after she reacted to him, retreat to the bathroom, and resume touching the victim when he believed she was asleep again. Although the time span between when the first touching and last touching occurred is unclear, the victim testified that only a "few minutes" elapsed between the first and second touching.

That the acts are distinct, however, does not mean they are separable from the sentencing offense. Here, defendant was charged with a single count of CSC-II, and the charging document refers to a single act of criminal "sexual contact with a person under 13 years of age . . . ." That single charge did not identify which particular touching constituted the sentencing offense. In her

-9-

closing argument, the prosecutor did not distinguish between any single act of touching as constituting CSC-II separate from the additional acts committed. Instead, the prosecutor argued that the jury could infer defendant's "intent" for acting with a "sexual purpose" because "there's no other reason that he would do that multiple times, going back from the couch to the bathroom, thinking [the victim] was asleep." Thus, the prosecutor relied on all touching instances to support a single CSC-II count (the sentencing offense) when she argued that the multiple instances established that defendant's actions could reasonably be construed as being for a sexual purpose. See *People v DeLeon*, 317 Mich App 714, 719-720; 895 NW2d 577 (2016) (establishing the elements necessary for a jury to convict a defendant of CSC-II under MCL 750.520c(2)(b)).

Like the prosecutor, the trial court did not distinguish between any one act constituting the sentencing offense compared with other acts of touching. Instead, it focused only on the "clear breaks" between each "instance" of touching to find that the additional acts supported a score of 25 points for OV 12.

One touch sufficed to convict defendant of CSC-II, and the jury could have convicted defendant of multiple counts of CSC-II had multiple counts been charged. But regardless of the number, the prosecutor also had to prove that "sexual contact" occurred, meaning "the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . . " MCL 750.520a(q). Here, like the prosecution in *Carter* when it had to prove intent, the prosecutor proved defendant's intent by arguing that all acts of touching constituted the sentencing offense, and no one otherwise attempted to distinguish any of the acts of touching. See *Carter*, 503 Mich at 229.

Our decision as to OV 12 could have been different under *Carter* if the case had been charged or argued differently. But where the five or six acts of touching collectively constitute the "sentencing offense," the acts cannot also be considered separate acts under OV 12. Accordingly, we conclude that the trial court clearly erred by treating three of the touchings as separate contemporaneous felonious criminal acts for purposes of OV 12.

Reducing defendant's OV score by 25 points alters the recommended minimum guidelines range. At sentencing, and with the 25 points for OV 12, defendant's total OV score was 50 points (level V), his prior record variable score was zero, and his minimum sentencing guidelines range was 19 to 38 months. With zero points for OV 12, defendant's total OV score would be 25, reducing his OV level to III, and, with the same prior record variable, his minimum guidelines range would be 10 to 19 months. MCL 777.64. Defendant is entitled to be resentenced. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006) ("Because defendant's sentence here is based upon an inaccurate calculation of the guidelines range and is, therefore, inconsistent with the law, defendant is entitled to be resentenced.").

For these reasons, we affirm defendant's conviction, vacate his sentence, and remand for resentencing. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense

-10-